UNITED SHOE MACHINERY COMPANY *vs.* HERBERT L. KIMBALL & another.

Essex. November 9, 1906. — January 1, 1907.

Present: KNOWLTON, C. J., HAMMOND, BRALEY, SHELDON, & RUGG, JJ.

*Contract,* Validity. *Sale,* Of good will. *Fraud. Good Will. Equity Jurisdiction,* To enforce negative contract. *Equity Pleading and Practice,* Appeal.

In a suit in equity by a manufacturer of shoe machinery, conducting business in all parts of the world where shoes are made by machinery, against a manufacturer of certain articles used in manufacturing shoes, who had been engaged in that business in a city in this Commonwealth and had sold out his business and its good will to the plaintiff with a covenant not to manufacture or deal in the articles formerly made by him for a period of fifteen years, to enforce by injunction the negative covenant of the defendant, if the defendant relies on the defence that the sale and the covenant were procured by fraud on the part of the plaintiff, and the only evidence in support of this defence is that there had been competition between the plaintiff and the defendant in the sale of the kind of articles manufactured by the defendant and that the plaintiff's agent had told the defendant what difficulties he would encounter in conducting his business against the plaintiff's competition, a finding of the justice who heard the case that the matters relied on to show fraud were only such as legitimately might result from competition where each party was striving to obtain an advantage over the other by the usual methods of business, and that there was no fraud or mistake in the making of the sale and covenant, will not be disturbed on appeal.

The sale of a business carried on in a city in this Commonwealth, consisting of manufacturing and dealing in needles, awls, drivers and like articles used in manufacturing boots and shoes, to a corporation engaged in manufacturing and selling machinery and devices for manufacturing boots and shoes, including needles, awls, drivers and like articles and conducting this business in all parts of the world where shoes are made by machinery, expressly including the good will of the business sold with a covenant on the part of the seller not to engage in or be interested in any business which consists in whole or in part in manufacturing or dealing in needles, awls or drivers for a period of fifteen years and without restriction as to place, where the time limit has been found as a fact not to be unreasonable, is valid, and the seller's negative covenant will be enforced against him in equity.

BILL IN EQUITY, filed August 17, 1906, to restrain the defendants from carrying on the business of manufacturing and dealing in awls, needles, drivers and similar articles, and from having any interest therein, contrary to the terms of a covenant of the defendants contained in a contract which is printed below.

The contract was as follows:

"Know all Men by These Presents:

"That we, Herbert L. Kimball and Irving A. Hadley, both of Lynn, Massachusetts, heretofore engaged as copartners at said Lynn and elsewhere in the business of manufacturing and dealing in needles, awls, drivers, and similar articles under the firm name and style of Kimball & Hadley, in consideration of the sum of four thousand, seven hundred and fifty dollars ($4750.00) in cash to us paid by the United Shoe Machinery Company, a corporation organized and existing under the laws of the State of New Jersey, having a place of business in Boston, Massachusetts, the receipt of which we hereby acknowledge, have sold and do by these presents sell, assign, transfer, set over and deliver to the said United Shoe Machinery Company, its successors and assigns, the said business heretofore carried on by us, together with the good-will thereof, and all business, good-will, property, interests and rights of every name and nature had by us or by either of us or which we or either of us is in anywise, by agreement or otherwise, entitled to acquire or take over relating to needles, awls, drivers, and like articles, including herein all merchandise, needles, awls, drivers, supplies, materials manufactured, unmanufactured or in process of manufacture, machines, machinery, tools, fixtures, furniture and equipment, the good-will of all such business, and all trade names, marks and brands, and all other property, interests and rights, benefits and advantages of whatsoever name or nature relating thereto; Excepting, However, that this assignment does not include any cash on hand or any bills, notes and accounts receivable.

"To Have and to Hold all of the said business, good-will, property, interests and rights to the said United Shoe Machinery Company, its successors and assigns, to its and their own use and behoof absolutely.

"And for the same consideration we and each of us do hereby covenant with and warrant to the said United Shoe Machinery

Company, its successors and assigns, that the property hereby conveyed includes all of the property set forth in the schedule hereto annexed and marked 'Schedule A'; that we are the absolute owners of all the business, good-will, property, interests and rights hereby conveyed or expressed or intended to be conveyed; that the same are free from any and all incumbrances; that we have good right to sell and assign the same as aforesaid, and will warrant and defend the same against the lawful claims and demands of all persons.

" And for the same consideration we and each of us do hereby covenant and agree to and with the said United Shoe Machinery Company, its successors and assigns, that at any and all times hereafter we and each of us will without further consideration execute and cause to be executed any and all further assignments or other instruments, and will perform and cause to be performed any and all further acts necessary or desired by the said United Shoe Machinery Company, its successors or assigns, to fully and completely vest and confirm in the said United Shoe Machinery Company, its successors and assigns, the full and absolute title in and to all the business, good-will, property, interests and rights, benefits and advantages hereby conveyed or expressed or intended to be conveyed, and to enable the said United Shoe Machinery Company, its successors and assigns, to secure, protect and enjoy the full benefits and advantages thereof.

" And for the same consideration we and each of us do hereby covenant and agree to and with the said United Shoe Machinery Company, its successors and assigns, that we will not nor will either of us at any time within fifteen (15) years from the date of these presents directly or indirectly, individually or in combination with others, as manager, agent or employee, or as officer or stockholder in a corporation, or otherwise, in any manner, enter into or be engaged or interested in or financially or otherwise assist any person, firm or corporation in entering into, developing or carrying on any business which consists in whole or in part of or relates to manufacturing or dealing in needles, awls or drivers.

" This sale shall take effect as of the close of business on the tenth day of June, A. D. 1904.

"In Witness Whereof we, the said Herbert L. Kimball and Irving A. Hadley have hereunto set our respective hands and seals, and have signed these presents in the name of the said partnership this eleventh day of June, A. D. 1904.

> "Kimball & Hadley    [seal]
> By Herbert L. Kimball
> Herbert L. Kimball    [seal]
> Irving A. Hadley"    [seal]

The defendants demurred to the bill, and also filed an answer. The demurrer was overruled and the defendants appealed. The case was heard on the merits by *Loring,* J., who made a final decree granting the relief prayed for; and the defendants appealed.

The justice made a memorandum of findings and rulings, beginning as follows:

" I think that the real trouble with these defendants is that they were met by competition. Take the statement on the stand of Mr. Kimball, one of the defendants. He said he did not want to sell his business. In a sense that was true. In another sense it was not true. In the sense that he had a business there that he would like to have pursued, if he could have pursued it without competition, I think that was true. In the sense that he was met with competition, and after due and mature consideration had come to the conclusion that he did not want to sell, it was not true. The defendants were met with competition. They thought over where the competition was going to put them, and made up their minds that the best thing they could do was to sell the good will of their business and their personal property to the United Shoe Machinery Company, and I think that they made the sale voluntarily."

Other material findings of the justice are referred to in the opinion. After referring to the evidence the memorandum of findings states: " So there was no fraud; there was no mistake, and there was no accident, about this contract that was entered into."

The justice refused to rule that the plaintiff had shown no right to the relief prayed for or to any relief.

In refusing requests to rule that if the plaintiff procured the execution of the covenant by means of threats or intimidation,

or by representations, or by threats or intimidation of an agent of the plaintiff, the covenant was void, the justice said:

"I find in this case as a fact that there were no illegal threats, and that there was no illegal intimidation on the part of the defendants. I refuse the ruling because I find in this case that there were, in fact, no illegal threats or illegal intimidation, and that it is not a fact that there were threats or intimidation which were illegal."

"So far as there were any representations made, it has not been shown by the defendants that the representations were false."

"I have found as a fact that all that the plaintiff did was to threaten to do what it had a legal right to do in competition."

The defendants also asked for the following rulings:

"6. The said covenant is void, as a matter of law, for the reason that the same is unlimited in its terms as to the space or territory covered thereby.

"7. The said covenant is void, as a matter of law, for the reason that the same is, upon its face, manifestly in restraint of trade.

"8. The said covenant is void, as a matter of law, because the period of time therein limited — fifteen years — is palpably excessive and unreasonable.

"9. The said covenant is void because same is not by its terms limited to the territory wherein the trade and business sold by the defendants to the plaintiff had been actually done and carried on."

The justice refused to make any of these rulings.

Requests for further rulings numbered 10 and 11 the justice disposed of as follows:

"'10. The said covenant is against public policy and void because, as regards time, space, and the extent of the defendants' trade, sold to plaintiff, the said covenant was not limited to what was, at the time of the execution thereof, reasonable under the circumstances of the case,' — I think it was restricted to what at the time of the execution thereof was reasonable under the circumstances of the case, and for that reason I refuse that part of the request, — 'and because said covenant tends to deprive the public of the services of the defendants in the particular employment and capacity in which they are most useful, to wit, the

making of needles, awls, and drivers, and to expose the public to the evil of a monopoly in the manufacture of such articles by the plaintiff.' That part I refuse.

" ' 11. The said covenant is void because, as a matter of law, it is unreasonable under the circumstances of the case, upon the facts as they shall be found by the court.' That I refuse."

*E. H. Hadley & J. W. Pickering*, for the defendants.

*W. B. Farr*, for the plaintiff.

KNOWLTON, C. J. The defendants were manufacturing and dealing in needles, awls, drivers and similar articles, and on June 11, 1904, they sold their business to the plaintiff. The plaintiff is a corporation engaged in the business of manufacturing and selling machinery and devices for manufacturing boots and shoes, including needles, awls and drivers, and other similar articles. The bill of sale from the defendants to the plaintiff included the business previously carried on by them, " together with the good-will thereof, and all business, good-will, property, interests and rights of every name and nature . . . relating to needles, awls, drivers, and like articles," etc. Besides other covenants of the defendants designed to effectuate the purpose of the parties, the instrument contained a covenant as follows: " And for the same consideration we and each of us do hereby covenant and agree to and with the said United Shoe Machinery Company, its successors and assigns, that we will not nor will either of us at any time within fifteen years from the date of these presents directly or indirectly, individually or in combination with others, as manager, agent or employee, or as officer or stockholder in a corporation, or otherwise, in any manner, enter into or be engaged or interested in or financially or otherwise assist any person, firm or corporation in entering into, developing or carrying on any business which consists in whole or in part of or relates to manufacturing or dealing in needles, awls or drivers." In the spring of 1906 the defendants established a business in Lynn where the business previously sold to the plaintiff was conducted, for the purpose of manufacturing and selling needles, awls and other articles like those which they were manufacturing when they made the sale. This suit was brought to enforce the covenant quoted above, by an injunction to prevent the defendants from carrying on the business so established.

The first defence relied on is that the instrument and the covenant contained in it were obtained by the fraud of the plaintiff. In reference to this contention the judge who heard the case found that "there was no fraud; there was no mistake, and there was no accident, about this contract that was entered into." A careful examination of the evidence, which was reported by a commissioner, shows that the only foundation for this contention is that there had been competition between the plaintiff and the defendants in the sale of needles, and that this was referred to by both parties in the course of the negotiations for the sale of the business, and that the plaintiff's agent told the defendants what difficulties they might encounter in conducting their business against the plaintiff's competition. The justice found that the matters referred to were only such as legitimately might result from competition while each party was striving to obtain an advantage over the other by the usual methods of business. In a case of this kind the findings of the single justice must stand unless they are plainly wrong. The evidence before us discloses no error in this finding.

The more important and difficult question is whether the covenant is invalid as being against public policy. The defendants contend that it is void because it is to continue in force for an unreasonably long time, and is unrestricted in space.

The testimony shows that considerably more than half of the consideration paid by the plaintiff was for the good will of the business, or to obtain relief from the competition of the defendants. It is not disputed that the business of the plaintiff is conducted in all parts of the civilized world where shoes are manufactured by machinery. Although the business carried on by the defendants was not large, it was of such a kind, and might be so extended, as to affect the market throughout this country and in other countries. The plaintiff made its purchase with a view to obtain the advantage of controlling the good will of this business in every part of the extended area in which it was itself selling needles. It might derive profit from the ownership of this good will, either affirmatively through the sale of articles of recognized merit, as a successor to the defendants in their business, or negatively through freedom from the competition which previously had diminished its own profits, and which

later might diminish them much more. These are considerations bearing upon the reasonableness of such a covenant in connection with the sale of a business and its good will to the proprietor of a competing business.

The law on this point, as laid down in early times, has been materially changed by recent decisions. Formerly it seems to have been held that a provision for a general restraint of any person in his trade was necessarily invalid. But in this Commonwealth and in other jurisdictions this is no longer the law. The subject was considered and many of the cases were referred to in *Anchor Electric Co.* v. *Hawkes*, 171 Mass. 101, in which there is this statement of the law: " In connection with the sale of the good will of a business, the vendor will be bound by any covenant which is reasonably necessary for the preservation and protection of the property which he sells. . . . In cases in which such covenants have been held bad they were .deemed to go further than was reasonable to give full value to the property sold." Under this rule, in conceivable cases, a covenant may be valid which is· unlimited both in time and space. This is held by a unanimous decision of the House of Lords in *Nordenfelt* v. *Maxim Nordenfelt Guns & Ammunition Co.* [1894] A. C. 535. The reasoning in the later American cases leads to the same result. *Leslie* v. *Lorillard*, 110 N. Y. 519. *Wood* v. *Whitehead Brothers Co.* 165 N. Y. 545. *Gibbs* v. *Consolidated Gas Co.* 130 U. S. 396, 409. *Oakdale Manuf. Co.* v. *Garst*, 18 R. I. 484. *Bancroft* v. *Union Embossing Co.* 72 N. H. 402. *National Enameling & Stamping Co.* v. *Haberman*, 120 Fed. Rep. 415.

The value of a business with its good will may be enhanced to a purchaser by the fact that its competition is detrimental to a business conducted by him. A considerable part of the price paid may represent the value to the purchaser of relief from the interference of the vendor as a competitor. The mere fact that a contract looks to the withdrawal of the competition of one of. the parties to it does not render the contract invalid. Ordinarily, with the present methods of conducting business and the freedom of communication between centres of trade and industry, such a contract does not create a monopoly, to the danger of the general public. An owner of a business, who can sell it for a large price in connection with a promise not to compete with

the purchaser of it, should not be precluded from obtaining its value. The value of the right to make contracts freely is a very important consideration in determining questions of public policy. *Leslie* v. *Lorillard*, 110 N. Y. 519. *Wood* v. *Whitehead Brothers Co.* 165 N. Y. 545. If it appeared that such a contract was made with a purpose to obtain a monopoly, and would have a direct tendency to that result, it would be looked upon with less favor. On the evidence in the present case this does not appear. But one legitimately may try to diminish competition in his own field, and may make reasonable efforts to enhance his profits by energy and enterprise as a pioneer where others only tardily follow.

In the present case the justice who heard the witnesses found that the relations of the respective parties to the business sold were such that the time limit was not unreasonable, and that the general covenant as to place was such as the defendants properly might make, for a valuable consideration, to accomplish the purpose shown in the contract. We cannot say that he was wrong in his conclusion.

*Decree affirmed.*