ARTHUR F. SHERMAN *vs.* WALTER E. PFEFFERKORN & another.

Norfolk.    December 8, 1921. — June 8, 1922.

Present: RUGG, C.J., BRALEY, DE COURCY, CROSBY, & JENNEY, JJ.

*Agency,* Restraint upon employment of agent after termination of agency, Fidelity. *Contract,* Consideration, What constitutes, Validity, Restraining freedom of employment.

The proprietor of a laundry business operating in three contiguous towns had in his employ, as laundry solicitor, collector and delivery man, one who had always lived in one of the towns and had a large acquaintance in all of them. No written lists of customers were given him, but their names and addresses were committed to memory from information supplied him by his employer or were acquired by his own experience. In most instances, customers on his route placed their laundry outside their doors for collection by the driver. During such employment, the proprietor and the employee made a contract in writing, not under seal, which designated the parties as employer and employee, stated that it was made "In consideration of the employment of the said employee by said employer and the weekly compensation now or hereafter to be agreed upon, mutually and verbally by both parties," and in which the employee agreed to accept his "employment upon the following terms and conditions: . . . 5. That he will keep secret and not devulge to any person, firm or corporation, except by express order of his employer, the names addresses or any information concerning any customers ˙of the said employer during said employment and for three years thereafter. 6. That he will not do, suffer or consent to any act or thing prejudicial or injurious to the business or good-will of said employer during said employment and for three years thereafter. 7. That said employee will not directly or indirectly, either as principal, agent or servant, for the term of three years, after any termination of said employment, enter or engage in any branch of the laundry business in the . . . [three towns] without the written consent and approval of said employer." Later, the employee's duties were changed and his work thereafter was the collection and delivery of laundry over definite routes. Subsequently he was discharged for justifiable cause. He then became one of the incorporators of a corporation competing with his former employer, owned one share of its stock, was a director and was entitled to a large share of its stock upon making certain payments. He gave the corporation information acquired by him while working for his former employer concerning

the names and addresses of his former employer's customers, and as a result some customers were lost to his former employer. Although his employment by the corporation had not been upon the exact routes upon which he worked for his former employer, he either solicited business from substantially all the people on his former employer's routes or was concerned in such solicitation. Many of these customers went to the corporation because of their friendly acquaintance with him. In a suit in equity by the former employer to restrain the employee and the corporation in their operations, it was *held,* that

(1) The contract in writing was not without consideration;

(2) The contract was not lacking in mutuality;

(3) The contract was not indefinite as to the nature or extent of the services or as to the plan of performance;

(4) A further provision of the contract, wherein the employee agreed that he "hereby consents," to relief being given in any suit in equity or action at law against him if he violated the contract, did not affect its initial validity as to consideration or mutuality;

(5) Considering the nature of the business and the conditions existing at the time of the suit, the contract was reasonable in its limitations as to time and space;

(6) It was proper to enjoin the individual defendant from soliciting within the designated towns patronage of customers of the plaintiff, the names of whom had become known to him in the course of and by reason of his employment, and from disclosing the names or using, to the detriment of the plaintiff, information or knowledge regarding the laundry business which had been confidentially gained by him in the course of his employment;

(7) The plaintiff was not entitled to a decree ordering the individual defendant to resign such offices as he held in the defendant corporation and to dispose of any stock or other interest therein, either legal or equitable, that he then owned;

(8) The paragraph of the contract numbered 7 went beyond what reasonably was required in order to protect the plaintiff's right of injunctive relief for a limited term against the disclosure or the use of information received in the employment and against soliciting, collecting, and delivering laundry within the specified towns; and, notwithstanding his contract, the employee had the right to engage or to be interested in the same line of business within the towns and during the term designated so long as he did not violate such right of the plaintiff;

(9) The provision in the agreement of the plaintiff, thus upheld, was distinct and separable from that which was held to be unenforceable, the invalid portions being separable from those which were valid;

(10) It was not necessary to determine the validity of the paragraph numbered 6, the plaintiff in this suit being given under paragraphs numbered 5 and 7 all the relief to which he was entitled in the circumstances;

(11) The plaintiff was entitled to an injunction forbidding the corporation defendant from employing the individual defendant as solicitor, collector or delivery man within the towns designated and for three years after the termination of the contract by the plaintiff; but he was not entitled to any broader injunction.

BILL IN EQUITY, filed in the Superior Court on May 27, 1920, and afterwards amended, against Walter E. Pfefferkorn and South Shore Laundry, Inc., seeking to enjoin the defendant Pfefferkorn from further serving the defendant South Shore Laundry, Inc., or acting in any capacity as its agent or servant or doing any act or thing in derogation of paragraph 7 of his written contract with the plaintiff, described in the opinion, until the expiration of the term of three years commencing with the date of the termination of his employment with the plaintiff; and that he be required to resign such office or offices as he then held with the South Shore Laundry, Inc., and to dispose of any capital stock of that company which he then owned, and from soliciting patronage of customers of the plaintiff whose names became known to the defendant in the course of and by reason of his employment by the plaintiff or whose names were learned from any employee of the plaintiff who gained knowledge of such names through the plaintiff's employ, and from disclosing such names to any person or corporation or otherwise using to the detriment of the plaintiff any knowledge and information confidentially gained in the plaintiff's service by the defendant. An injunction was sought against the defendant South Shore Laundry, Inc., its officers, agents and servants from making use of the disclosure by the defendant Pfefferkorn or any other former employee or employees of the plaintiff of confidential information or business secrets obtained by such employees of the plaintiff while in the plaintiff's employ or through other employees of the plaintiff; and an accounting by it was asked for as to all business done by it with the plaintiff's customers through information obtained from the defendant Pfefferkorn or from any other former employee of the plaintiff, and damages for any injury inflicted upon the plaintiff through loss of patronage.

The contract between the plaintiff and the defendant Pfefferkorn stated that it was made "In consideration of the employment of the said employee by said employer and the weekly compensation now or hereafter to be agreed upon, mutually and verbally by both parties." Other material provisions are described in the opinion.

The suit was referred to a master. Material facts found by the master are described in the opinion. Exceptions by the de-

fendants to the report were heard by *Sisk*, J., and by his order there were entered an interlocutory decree overruling the exceptions and confirming the report and a final decree, material portions of which were as follows:

The defendant Pfefferkorn was permanently restrained and enjoined from further serving the defendant, South Shore Laundry, Inc., within the towns of Weymouth, Hingham and Braintree, or acting in any capacity as agent or servant of said South Shore Laundry, Inc., or doing any act or thing in derogation of his written contract with the plaintiff during the three years following November 17, 1919, or from soliciting patronage of customers of the plaintiff within the towns of Weymouth, Hingham and Braintree, the names of which customers became known to the defendant Pfefferkorn in the course of, and by reason of his employment by the plaintiff, and from disclosing the names to any person or corporation or otherwise using, to the detriment of the plaintiff Sherman, information or knowledge regarding the laundry business of the plaintiff confidentially gained by the defendant Pfefferkorn in the course of his employment with the plaintiff Sherman; and the defendant Pfefferkorn was "required to resign such office or offices as he now holds with said South Shore Laundry, Inc., and to dispose of any capital stock of said company, or other interest therein, either legal or equitable, which he now owns."

The defendant, South Shore Laundry, Inc., its officers, agents and servants were permanently restrained and enjoined from making use of any knowledge or information confidentially gained by the defendant Pfefferkorn concerning the business of the plaintiff, by reason of Pfefferkorn's employment by the plaintiff, and by Pfefferkorn disclosed to South Shore Laundry, Inc., "and from further employing or retaining in its employ in any capacity the defendant Pfefferkorn within the towns of Weymouth, Hingham and Braintree."

The defendants appealed from both decrees and afterwards in writing waived their exceptions to the master's report.

*F. E. Knowles & A. V. Harper*, for the defendants.

*E. M. Sullivan, (G. E. Richardson & L. J. Gilbride* with him,) for the plaintiff.

JENNEY, J. The plaintiff is now and since June, 1917, has

been the owner of a laundry with a place of business in Weymouth and laundry routes in that town and in Hingham and Braintree. Walter E. Pfefferkorn, one of the defendants, has always lived in Weymouth and has a large acquaintance in these towns.

In the latter part of 1918, the duties of Pfefferkorn under his employment by the plaintiff were changed and his work thereafter was the collection and delivery of laundry over definite routes. No written lists of customers were given him, but the names and addresses were committed to memory from information supplied him by the plaintiff or were acquired by his own experience. In most instances, customers on his route placed their laundry outside their doors for collection by the driver.

On August 7, 1917, while he was working for the plaintiff, he executed a contract of employment as laundry solicitor, collector, and delivery man; the term of employment was at the will of the parties.

The material terms of the contract are:

"5. That he will keep secret and not devulge to any person, firm or corporation, except by express order of his employer, the names addresses or any information concerning any customers of the said employer during said employment and for three years thereafter.

"6. That he will not do, suffer or consent to any act or thing prejudicial or injurious to the business or good-will of said employer during said employment and for three years thereafter.

"7. That said employee will not directly or indirectly, either as principal, agent or servant, for the term of three years, after any termination of said employment, enter or engage in any branch of the laundry business in the following territory, without the written consent and approval of said employer:

"Town of Weymouth, Hingham, Braintree.

"8. That he will not allow any person or persons to accompany him while traversing the routes to which he is assigned, without the express permission of said employer. . . .

"11. That he hereby consents that an order, either permanent or temporary, may be made in any suit in equity, brought for the purpose of enjoining him from violating any of the provisions of this agreement or in any other action at law which,

by advice of counsel, said employer may take to enforce his rights under this contract."

The instrument was not void for lack of consideration. Reasonably construed, it contained a promise by the plaintiff thereafter to employ the defendant and by the defendant to work for the plaintiff. Nor was it open to just criticism as failing in mutuality. The plaintiff's right to discharge the defendant, and the latter's privilege of termination were on equal footing. The contract was not indefinite as to the nature or extent of the services or as to the place of performance. No question is made but that the amount to be paid was fixed by separate agreement. The provision as to the consequence of its termination by the defendant did not affect its initial validity as to consideration or mutuality. *Harper* v. *Hassard*, 113 Mass. 187. *Preston* v. *American Linen Co.* 119 Mass. 400. *Carnig* v. *Carr*, 167 Mass. 544. *Daniell* v. *Boston & Maine Railroad*, 184 Mass. 337, 343. See Williston on Contracts, § 140.

On November 17, 1919, Pfefferkorn was discharged for justifiable cause. In the April following, he became one of the incorporators of the South Shore Laundry, Inc., hereinafter designated as the South Shore Company, and was for some time one of its directors. He owns one share of its stock, and has an arrangement whereby he and one Tredenick also a former employee of the plaintiff, may become the owners of one half of the stock of the company upon payment of certain moneys; but that payment has not yet been made. He has given to the South Shore Company information acquired by him while working for the plaintiff concerning the names and addresses of the plaintiff's customers, and as a result some customers have been lost to the plaintiff. Although his employment by that company has not been upon the exact routes upon which he worked for the plaintiff, he either has solicited business from substantially all the people on the plaintiff's routes or has been concerned in such solicitation. Many of these customers went to the South Shore Company because of their friendly acquaintance with him.

The plaintiff does not claim that he is entitled, under paragraph 11, to any broader relief than that warranted by the terms of the contract. The questions involved wholly relate to the

validity and enforcement in equity of paragraphs numbered 5, 6, and 7. The suit is here upon the defendants' appeal.

It long has been settled that contracts restraining freedom of employment can be enforced only when they are reasonable and not wider than is necessary for the protection to which the employer is entitled and when not injurious to the public interest. *Taylor* v. *Blanchard,* 13 Allen, 370. *Anchor Electric Co.* v. *Hawkes,* 171 Mass. 101, 106. *New York Bank Note Co.* v. *Kidder Press Manuf. Co.* 192 Mass. 391, 403. *Foss* v. *Roby,* 195 Mass. 292, 298. *Gibbs* v. *Consolidated Gas Co. of Baltimore,* 130 U. S. 396. *United States* v. *Delaware, Lackawanna & Western Railroad,* 238 U. S. 516, 533.

As stated by Lord Macnaghten in *Nordenfeldt* v. *Maxim Nordenfeldt Guns & Ammunition Co. Ltd.* [1894] A. C. 535, 565: "The public have an interest in every person's carrying on his trade freely: so has the individual. All interference with individual liberty of action in trading, and all restraints of trade of themselves, if there is nothing more, are contrary to public policy, and therefore void. That is the general rule. But there are exceptions: restraints of trade and interference with individual liberty of action may be justified by the special circumstances of a particular case. It is a sufficient justification, and indeed it is the only justification, if the restriction is reasonable — reasonable, that is, in reference to the interests of the parties concerned and reasonable in reference to the interests of the public, so framed and so guarded as to afford adequate protection to the party in whose favour it is imposed, while at the same time it is in no way injurious to the public. That, I think, is the fair result of all the authorities." This rule is in accord with our cases. It must be applied with reference to conditions existing at the time in the particular business concerned. A similar principle applies to contracts for the sale of an existing business, and the seller is not permitted to impair or to destroy the good will sold by him either where he has expressly contracted not to do so or where such an undertaking is implied. *Dwight* v. *Hamilton,* 113 Mass. 175. *Gamewell Fire Alarm Telegraph Co.* v. *Crane,* 160 Mass. 50. *Anchor Electric Co.* v. *Hawkes, supra.* *United Shoe Machinery Co.* v. *Kimball,* 193 Mass. 351. *Old Corner Book Store* v. *Upham,* 194 Mass. 101. *Marshall Engine Co.* v.

*New Marshall Engine Co.* 203 Mass. 410.  Obviously, a greater measure of relief is ordinarily required in such cases than in those involved in a contract of employment for a limited purpose and one not so broad as the business to which it relates.  Considerations closely analogous prevent the disclosure by employees of secret processes, or their use of information obtained in an employment where such use amounts to a breach of duty.  *American Stay Co.* v. *Delaney,* 211 Mass. 229.  *Essex Trust Co.* v. *Enwright,* 214 Mass. 507.  *Aronson* v. *Orlov,* 228 Mass. 1.  *Wireless Specialty Apparatus Co.* v. *Mica Condensing Co. Ltd.* 239 Mass. 158.

Considering the nature of the business and the conditions now existing, the contract here considered was reasonable in limitations as to time and space.  It clearly follows that Pfefferkorn was rightly enjoined from soliciting within the towns of Weymouth, Hingham, and Braintree patronage of customers of the plaintiff, the names of whom had become known to him in the course of and by reason of his employment, and from disclosing the names or using, to the detriment of the plaintiff, information or knowledge regarding the laundry business which had been confidentially gained by him in the course of his employment.  The decree, however, did much more than restrain him from doing any act or thing in derogation of his written contract. It ordered Pfefferkorn to resign such offices as he then held in the South Shore Company and to dispose of any stock of said company or other interest therein either legal or equitable which he then owned.

In these respects the decree was wrong.  The contract in terms forbade his employment by the South Shore Company in any capacity, even although the use or disclosure of the names of customers or other information of a confidential nature was not required thereby and although such information could not be of use in the new employment.  The master found that Pfefferkorn had ceased to hold office in the defendant company.  The requirement as to the sale of stock or other interest was not necessary to give the plaintiff all that he was entitled to receive. The terms of the seventh paragraph of the contract went beyond what reasonably was required in order to protect the plaintiff's right of injunctive relief for a limited term against the dis-

closure or the use of information received in the employment and against soliciting, collecting, and delivering laundry within the specified towns. The plaintiff is entitled to have the individual defendant enjoined as to such employment, as his contract is to that extent valid because his personal knowledge and acquaintance with the customers enabled him to take advantage of his employer's trade connections and permitted him to use the information confidentially obtained. Notwithstanding his contract, the employee had the right to engage in the same line of business or to be interested therein, but not beyond the bounds defined. The measure of relief required must be determined by the facts in each case. *Herbert Morris, Ltd.* v. *Saxelby,* [1916] 1 A. C. 688. *Mason* v. *Provident Clothing & Supply Co. Ltd.* [1913] A. C. 724. *Hepworth Manuf. Co. Ltd.* v. *Ryott,* [1920] 1 Ch. 1. *Dewes* v. *Fitch,* 36 T. L. R. 585.

*Old Corner Book Store* v. *Upham, supra,* is not authority to the contrary. There the defendant had sold the good will of a business and the setting up of a competing business or being interested therein tended to destroy that which he had sold. *Herbert Morris, Ltd.* v. *Saxelby, supra.*

This result is warranted by authority as well as by the reasons stated, and is within the clear scope of the cases already cited. There are cases apparently contrary to our conclusion, but we do not follow them. Some are plainly distinguishable because of the much broader nature of the employment considered. *Empire Steam Laundry* v. *Lozier,* 165 Cal. 95. *McCall Co.* v. *Wright,* 198 N. Y. 143. *Eureka Laundry Co.* v. *Long,* 146 Wis. 205. *O. & W. Thum Co.* v. *Tloczynski,* 114 Mich. 149.

The plaintiff is not concluded from relief because the contract was too broad. The provision in the agreement of the plaintiff which has been upheld is distinct and separable from that which has been struck down. *Dean* v. *Emerson,* 102 Mass. 480. See *Attwood* v. *Lamont,* [1920] 3 K. B. 571. It is not objectionable because of the authority of *Bishop* v. *Palmer,* 146 Mass. 469.

It is not necessary to decide whether the sixth paragraph of the agreement purports to afford the plaintiff protection to which he is not entitled. All the injunctive relief that ought to be granted on this record is justified by paragraphs 5 and 7.

The plaintiff is also entitled to relief against the South Shore

Company. The facts found required an inferential finding that that company received the individual defendant into its employment knowing of his former service with the plaintiff and for the purpose of securing information which the individual defendant had no right to disclose. *Wireless Specialty Apparatus Co.* v. *Mica Condensing Co. Ltd., supra.* The provisions of the decree relating to the defendant company are also too broad. They are unlimited in time. Where protection under an agreement is restricted to three years after the termination of an employment, the contract bounds the rights of the parties as to time, and after the expiration of the period the prohibition ceases to exist; on this record the plaintiff ought not to be afforded equitable relief for a time beyond that for which the individual defendant contracted, and the corporate defendant ought not to be enjoined from employing the defendant in a capacity not in any way connected with his contract with the plaintiff, even during the period fixed therein.

The part of the decree as to Pfefferkorn must be modified by omitting therefrom the provisions forbidding the doing of any act or thing in derogation of his written contract and requiring him to resign office and to dispose of any interest, legal or equitable, in the capital stock of the defendant company. The portion of the decree restraining him from soliciting customers or disclosing or using information must be limited to three years from November 17, 1919. So far as it affords relief against the corporate defendant, on the facts disclosed it must be modified so as to forbid employment as solicitor, collector, or delivery man, and to limit this and the other relief given to the term just defined. When so modified, the decree is to be affirmed with costs.

*Ordered accordingly.*