CHANDLER, GARDNER & WILLIAMS, INCORPORATED, *vs.* AARON A. REYNOLDS.

Essex.   October 24, 1924. — November 25, 1924.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Equity Jurisdiction,* To restrain unlawful interference, Specific performance of contract. *Contract,* Consideration, Validity, Construction. *Equity Pleading and Practice,* Decree. *Words,* "Vicinity."

A contract in writing between a corporation engaged in the undertaking business in Haverhill and a man, who was not a registered embalmer, who had been the assistant manager of another firm of embalmers and whom the corporation was about to employ, provided that, in consideration of the corporation's employing him at a stipulated salary and instructing and training him and introducing him to its customers, the employee would "not enter into, either directly or indirectly, as employee, manager or proprietor, owner, stockholder, copartner or otherwise, in the said City of Haverhill, Mass. and vicinity, the same or similar business, which in any manner might be construed as being a competitive business" of the plaintiff "for a period of ten years after such termination of said employment . . . as in this agreement provided." While the contract was in force, the corporation discharged the employee for cause, giving him a notice required by the contract. The employee then set up a competing business within fifty yards of the corporation and the corporation brought a suit in equity to restrain him, in which a final decree was entered which enjoined the defendant "from engaging further in the business of undertaking in the city of Haverhill and vicinity" during the term of the contract. The defendant appealed. The evidence was not reported. *Held,* that

(1) The contract was valid in respect to consideration and mutuality of obligation. Following *Sherman* v. *Pfefferkorn,* 241 Mass. 468;

(2) A provision of the contract, that the employer was to be the sole and exclusive judge whether any one of the stated grounds for discharge existed, did not make it invalid, the provision fairly construed meaning that the employer's judgment was to be sole and exclusive only if justly and honestly entertained;

(3) The provision of the contract restricting the employee from competition during the period of ten years was not as a matter of law invalid as an unreasonable restraint of trade;

(4) The decree entered necessarily meant that the trial court found as matter of fact that the period of ten years was reasonable, and, the evidence not being reported, the finding must stand;

(5) The words "Haverhill . . . and vicinity" were not as a matter of law so indefinite as to make the contract unenforceable;

(6) The plaintiff was entitled to equitable relief;

(7) That part of the decree which restrained the defendant from engaging in the business of undertaking "in the city of Haverhill and vicinity" was not definite and did not inform the parties of their rights and obligations under it; and therefore the decree was reversed and the case remanded for further hearing to determine the meaning of the word "vicinity" by fixing the limits beyond the city of Haverhill, if any, within which the defendant if engaged in the undertaking business would be in competition with the plaintiff; and, after hearing, for the entry of a decree not inconsistent with this opinion.

*It seems*, that it is improper to include in a final decree in a suit in equity, preceding the words, "it is thereupon, upon consideration thereof, ordered, adjudged and decreed:", a statement, "it appearing that the plaintiff is entitled to the relief prayed for in his bill."

BILL IN EQUITY, filed in the Superior Court on January 10, 1924, seeking a decree restraining the defendant "from engaging further in the business of undertaking in the city of Haverhill until July 1, 1932," and for damages.

The suit was heard in the Superior Court by *Sisk*, J. Material facts found by him are described in the opinion. By order of the judge, the final decree quoted in the opinion was entered. The defendant appealed.

*H. W. Ogden*, for the defendant.

*H. W. Babb*, for the plaintiff.

SANDERSON, J.   This is a bill in equity brought to restrain the defendant " from engaging further in the business of undertaking in the city of Haverhill until July 1, 1932," with a prayer for the assessment of damages, and for general relief.   The case was heard by a single justice of the Superior Court, who made findings of fact upon which a final decree in the following form was entered:

" This case came on to be heard at this sitting, and was argued by counsel, and upon the facts found by the court, a memorandum whereof has been filed in the case, it appearing that the plaintiff is entitled to the relief prayed for in its bill, it is thereupon, upon consideration thereof, ordered, adjudged and decreed:

" 1. That the defendant, Aaron A. Reynolds, be restrained from engaging further in the business of undertaking in the city of Haverhill and vicinity until July 1st, 1932."

The case is before us on the defendant's appeal from this decree.

The plaintiff corporation, under the name of Chandler and Farrell, Inc., was engaged in the business of undertaking and embalming in the city of Haverhill.   On July 1, 1922, it bought the stock, fixtures and good will of the J. W. Emerson Farrell Company, which owned and conducted a like establishment, and thereafter continued in the business of " undertaking . . . embalming, conducting funerals and selling funeral and burial supplies and equipment of every kind and character."   In October, 1921, the defendant had become the assistant manager of the J. W. Emerson Farrell Company, which position he continued to hold until the sale of the stock, fixtures and good will of that company to the plaintiff. At the time when this sale was made the plaintiff, under the name of Chandler and Farrell, Inc., entered into an " Agreement of Employment " under seal with the defendant, in which (so far as here material) it was mutually agreed between the parties, in substance, that the plaintiff was engaged in the undertaking business in the city of Haverhill; that by reason of its skilful methods of embalming, its ability to establish and maintain the good will of the people, through personal contact of its officers and employees with its patrons and the public generally, it had built up a large and profitable business; that because the defendant was unfamiliar with the methods and details of said business, the plaintiff would have to devote considerable time to instructing him; that this instruction would of necessity bring the defendant into personal contact with the plaintiff's patrons; that, in consideration of the employment

itself coupled with the compensation stipulated in the agreement to be paid, and also recognizing the fact that his entering into a similar business in said city of Haverhill and vicinity under the facts, circumstances and conditions above set forth would naturally and inevitably result in great and irreparable loss, injury and damage which could not be adequately estimated or measured in money, the defendant would " not enter into, either directly or indirectly, as employee, manager or proprietor, owner, stockholder, copartner or otherwise, in the said City of Haverhill, Mass. and vicinity, the same, or similar business, which in any manner might be construed as being a competitive business " of the plaintiff " for a period of ten years after such termination of said employment . . . as in this agreement provided"; that the compensation should be $40 per week and the employment be for three months ending October 1, 1922; that the plaintiff reserved the right and privilege to discharge the defendant "at any time, should . . . [he] fail, neglect or refuse to properly perform his said work under this agreement," or should he perform any act of personal conduct which, in the opinion of the plaintiff, might tend, either directly or indirectly, to injure it or its business, the plaintiff to be the sole and exclusive judge in either case; that the provision stipulating that the defendant would not enter into a similar or competing business in Haverhill and vicinity should continue during the term of the agreement and any and all extensions thereof. On September 26, 1922, the parties agreed that the contract, entered into on July 1, 1922, should be extended until cancelled by a thirty days' notice by either party, and the wages should be increased to $100 per week from October 1, 1922. No evidence as to damages was offered at the trial.

The court found that, upon the evidence relating to the defendant's conduct and performance of his duties, the plaintiff had sufficient cause to discharge the defendant, and that on March 12, 1923, it gave him formal notice of his discharge; that in January, 1923, while in the employ of the plaintiff, the defendant became a registered embalmer; that he was instructed by the president of the plaintiff company both

orally and in writing as to the methods used in its undertaking and embalming business; that the defendant, while so employed, came in contact with the families who employed the plaintiff, and that during the period of his employment by the plaintiff he had charge of seventy-five funerals.

" Shortly after the defendant ceased to work for the plaintiff he engaged in the undertaking business in Lynn, Massachusetts. Later he went into the undertaking business in Haverhill with J. W. Farrell, the father of J. W. Emerson Farrell. He continued in that business with J. W. Farrell for about three months. After that time and up to the date of this trial he was associated in the undertaking business with Mrs. Farrell, the wife of J. W. Emerson Farrell, under the name of Farrell and Reynolds, in a store at 35 Main Street, Haverhill. The plaintiff's place of business was at 53 Main Street, about fifty yards from the place of business of Farrell and Reynolds." It is stated in the findings of fact that it did not appear in evidence whether the defendant and Mrs. Farrell were partners, nor what the arrangement was between them; and that the defendant in cross-examination testified that " she (Mrs. Farrell) was there (35 Main Street) now, and is working with him (the defendant)." The court further found that a sign bearing the names Farrell and Reynolds is maintained and has been for some time past over the store No. 35 Main Street; that Farrell and Reynolds when they opened their store advertised their business in the Haverhill newspapers; that they had conducted about eighteen or nineteen funerals in Haverhill and vicinity since the defendant ceased to work for the plaintiff; and that " The fair inference is that Mrs. Farrell was secured solely for the use of her name by the defendant."

The questions for our determination are: (1) Whether there was consideration moving from the defendant to support the contract and the covenant not to engage in a competitive business; (2) Whether the covenant of the defendant that he would " not enter . . . the same, or similar business," in the city of Haverhill and vicinity, " for a period of ten years after such termination of said employment " will be enforced by a court of equity; and (3) Whether the decree is too vague and uncertain to be given effect.

The contract was valid in respect to consideration and mutuality of obligation. This has been so recently decided after full consideration in the case of a contract in many respects similar to the one in question, that no good purpose would be served by doing more than to refer to that case. *Sherman* v. *Pfefferkorn*, 241 Mass. 468. The fact, that this plaintiff was to be the sole and exclusive judge whether any one of the stated grounds for discharge existed, does not lead to a different conclusion. The contract fairly construed means that the plaintiff's judgment is to be sole and exclusive only if justly and honestly entertained. *Tobin* v. *Kells*, 207 Mass. 304. 1 Williston, Contracts, § 44. *American Music Stores* v. *Kussel*, 232 Fed. Rep. 306. Each party had enforceable rights under the contract and there has been a change in the situation of the parties because of the contract and a partial performance of it. *Freeman* v. *Fishman*, 245 Mass. 222, 227. In *Preston* v. *American Linen Co.* 119 Mass. 400, 404, the court said: " It is competent for either party to give to the other the right to terminate the contract abruptly while he himself agrees only to do so upon notice; and such a contract would be good upon sufficient consideration."

The decree entered necessarily means that the trial court found the period of ten years to be reasonable. An agreement for this period of time is not as a matter of law invalid as an unreasonable restraint of trade. *United Shoe Machinery Co.* v. *Kimball*, 193 Mass. 351. *Foss* v. *Roby*, 195 Mass. 292. At the time when the plaintiff purchased the good will of the business of the defendant's employer, it engaged the defendant to work for it, and one of the evident purposes of making the contract with him was to protect the good will which it then bought. The plaintiff agreed to teach the defendant its methods of doing business, its processes of embalming and to bring him personally into touch with its customers. One of the purposes of the agreement was to prevent the defendant from taking advantage of the knowledge thus gained by engaging in a competing business in the territory named to the injury of the plaintiff. By using the word " vicinity " the parties must have in-

tended to include the territory in the immediate neighborhood of Haverhill where an undertaker would be in competition with the plaintiff. In *Commonwealth* v. *Parker*, 2 Pick. 550, 553, the court, in discussing the meaning of the word "vicinity" in art. 13 of the Declaration of Rights, which provides that " In criminal prosecutions, the verification of facts in the vicinity where they happen, is one of the greatest securities of the life, liberty, and property of the citizen," said, "the word 'vicinity' is not technical, with a precise legal meaning, as the word 'county' or the ancient word 'visne,' vicinage would be held to be." The words "Haverhill . . . and vicinity" are not too indefinite to be enforced. *Burton* v. *Douglass*, 141 Wis. 110. *Morristown Auto Bus Co.* v. *Madison*, 56 Vroom, 59. They are not as matter of law too wide to be a reasonable restraint of trade. *Timmerman* v. *Dever*, 52 Mich. 34. *Sherman* v. *Pfefferkorn*, *supra*. It is well established that the situation of the parties and the circumstances at the time a contract is made may be shown to apply the contract to the subject matter, and that extrinsic evidence is admissible to determine the meaning of a term of a contract. *New England Dressed Meat & Wool Co.* v. *Standard Worsted Co.* 165 Mass. 328, 332. *Smith* v. *Vose & Sons Piano Co.* 194 Mass. 193. In the case of *Haley* v. *Dorchester Mutual Fire Ins. Co.* 12 Gray, 545, the jury were permitted, after hearing evidence, to determine the meaning of the word "vicinity" used in an application which was made part of a contract of insurance. In *Gilman* v. *Dwight*, 13 Gray, 356, the defendant had sold the plaintiff his professional business as a doctor in South Deerfield, and agreed that for four years no other physician would establish himself in South Deerfield as a competitor unless the plaintiff should commit some act which would forfeit to him the confidence of the community. South Deerfield had no fixed territorial limits. The court held that the terms of the contract were not so indefinite and uncertain that a court of law would not attempt to enforce them; that the term "community" in the contract "interpreted according to the subject matter, would probably be held to be the population residing in the village [South Deerfield] and its vicinity,

among which the defendant practised his profession at the time of his contract with the plaintiff"; and also, that what was usually known as South Deerfield might be shown.

The plaintiff is entitled to equitable relief against the defendant who, in violation of the terms of his agreement, has set up a competing undertaking business on the same street and within fifty yards of the plaintiff's place of business.

" A final order of a court settles rights of parties. It must declare by its own terms what those rights are to the end that they may be enforced. It must inform the parties as to their rights and obligations. It must contain enough to permit the court itself to adjudge whether its decision has been flouted, if there are proceedings for contempt. . . . A final decree ' provides for all the contingencies which may arise and leaves no necessity for any further order of the court to give to all the parties the entire benefit of the decision.' " *Johnson's Case,* 242 Mass. 489, 494. " It is the final adjudication of the court upon the issues raised." *Smith* v. *Smith,* 222 Mass. 102, 103. It follows that the statement in the decree that the plaintiff is entitled to the relief prayed for in its bill should be omitted.

So much of the decree as enjoins the defendant from engaging in the business of undertaking in the city of Haverhill is sufficiently definite; but that part which restrains him from engaging in the business of undertaking in the vicinity of Haverhill is not definite and does not inform the parties of their rights and obligations under it. The decree is reversed and the case is remanded to the Superior Court for further hearing to determine the meaning of the word "vicinity" by fixing the limits beyond the city of Haverhill, if any, within which the defendant if engaged in the undertaking business would be in competition with the plaintiff; and, after hearing, for the entry of a decree not inconsistent with this opinion.

*Ordered accordingly.*