HORACE A. EDGECOMB *vs.* S. KEMP EDMONSTON.

Suffolk.    January 18, 1926. — August 2, 1926.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, CARROLL, WAIT, & SANDERSON, JJ.

*Contract,* Of employment, Construction.    *Equity Jurisdiction,* To restrain unlawful interference.    *Equity Pleading and Practice,* Decree.    *Unlawful Interference.*

Provisions of a contract in writing and under seal between a public stenographer and an employer of stenographers were that the stenographer agreed "to give his entire time and services as shorthand reporter to the" employer for four years, "and this agreement shall continue in full force and effect thereafter until one of the parties hereto shall, on or before the first day of July in any year give to the other party written notice of his intention to terminate his agreement on the first day of the following September, in which case the term hereby created shall terminate in accordance with such notice."    Further provisions were that the stenographer "guarantees that he is a qualified Court Stenographer, competent and experienced, and that his services in such capacity shall be satisfactory to the" employer; that the stenographer "further agrees that upon the termination of this Agreement he will not, without the consent of the" employer "in writing thereto first obtained, engage in any line of business similar to the" employer's "within the Commonwealth of Massachusetts, for a period of five years thereafter." *Held,* that the period of five years from "the termination of this Agreement" during which the stenographer agreed not to engage in a business similar to that of the employer in the Commonwealth, began upon a lawful termination of the contract by the employer for cause.

A judge who heard a suit in equity by the employer to enforce the covenant by the stenographer in the contract above described not to engage in a business similar to that of the employer for five years after the termination of the agreement, found that the defendant was "a qualified court stenographer, competent and experienced but that his services in that capacity under said contract were not satisfactory to the plaintiff; that the plaintiff acted in good faith and was actually and honestly dissatisfied; that the plaintiff performed all the obligations imposed upon him by said contract; that the employment of the defendant was terminated by the plaintiff for good cause."    *Held,* that the finding by the judge that the plaintiff was actually and honestly dissatisfied warranted his finding "that the employment of the defendant was terminated . . . for good cause," without a further finding that the plaintiff's judgment of dissatisfaction was "justly and honestly entertained."

Discussion by PIERCE, J., of the principles of law governing suits in equity to enforce negative covenants in contracts as to carrying on business.

The employer, the plaintiff in the suit in equity above described, conducted a general law reporting office, his customers being of Boston for the most part, although he had customers in other large cities of the Commonwealth. The defendant, previous to his employment by the plaintiff under the contract in 1921, had lived in Washington, reporting trials in the courts of the District of Columbia and of Virginia and Maryland, hearings before congressional committees, and conventions. The judge found that the contract was broken by the defendant and that "No evidence was offered of any substantial damage suffered by the plaintiff because of the defendant's breach of his covenant not to engage in Massachusetts in a line of business similar to the plaintiff's after the termination of said contract." *Held*, that

(1) The exercise of the business of stenographer by the defendant would be likely to impair the good will of the plaintiff's business, and the damages which he would be able to prove would be inadequate and unsubstantial, for the reason that the basis for the computation would be too speculative, conjectural or uncertain;

(2) The suit was within the equity jurisdiction of the court.

In the suit above described, the judge found that the "limitation of the covenant as to territory went beyond what reasonably was required in order to protect the plaintiff's right of injunctive relief for a limited period against the defendant's competition," and "that so far as said covenant restrained the defendant from engaging in any line of business similar to the plaintiff's within the city of Boston and from soliciting the plaintiff's customers within the Commonwealth, the limitation was reasonable." The judge ordered a decree restraining the defendant from engaging in any line of business similar to the plaintiff's within the city of Boston, and from soliciting the plaintiff's customers within the Commonwealth for a period of five years from the date of the termination of the contract by the plaintiff. *Held*, that

(1) The theory of the divisibility of space as applied by the trial judge to the contract was consonant with public policy and was more consistent with the intent of the contract than was a contention by the defendant that the negative covenant was not enforceable in equity, in whole or in part, because the unit of space was not so described as to indicate its component territorial parts and divisions;

(2) The decree ordered was proper.

BILL IN EQUITY, filed in the Superior Court on November 13, 1924, to enjoin the defendant from engaging in any line of business similar to that of the plaintiff within the Commonwealth for a period of five years from September 1, 1924.

In the Superior Court, the suit was heard by *Weed*, J.

The letter of the plaintiff to the defendant dated April 16, 1923, quoted in the statement of findings by the trial judge and referred to in the opinion, was as follows:

"Referring to your contract of November 21, 1921, of which Paragraph 2 is as follows: 'The said Edmonston

guarantees that he is a qualified Court Stenographer, competent and experienced, and that his services in such capacity shall be satisfactory to the said Edgecomb', as I have frequently said to you informally the quality of the work you are doing and the unprecedented delay in doing it have made your work unsatisfactory to my customers and therefore to me, and I am obliged to give you notice of the termination of your employment under said contract, effective not later than May 15, 1923, and as much earlier as is convenient to you.

"The manner in which you have rendered service has been the source of complaint from customers, your office work has caused irritation and expense needlessly, and the protracted delays in dictating notes taken by you makes it impossible to further use your service. You have said that you were unduly loaded with work and I have checked the work you have done since March 26, three weeks past, and find that the shortest delivery to a customer is one week, and others are two weeks and more delayed in the office. Your average product has fallen below 40 pages of record taken and dictated per day, or about half the product of a 'qualified Court Stenographer, competent and experienced.'"

Other material findings and rulings by the judge are stated in the opinion. The judge ordered a final decree "restraining the defendant from engaging in any line of business similar to the plaintiff's within the city of Boston, and from soliciting the plaintiff's customers within the Commonwealth of Massachusetts for a period of five years from April 16, 1923," and reported the suit to this court for determination.

The case was argued at the bar in January, 1926, before *Rugg*, C.J., *Pierce, Crosby, Wait, & Sanderson*, JJ., and afterwards was submitted on briefs to all the Justices.

*L. A. Mayberry*, (*P. Mansfield* with him,) for the defendant.
*R. W. Hale*, (*A. A. Owen* with him,) for the plaintiff.

PIERCE, J. This is a suit in equity seeking to enjoin the defendant from engaging in any line of business similar to the plaintiff's within the Commonwealth of Massachusetts, for a period of five years after September 1, 1924. The case was heard by a judge of the Superior Court, who reports it

to this court upon his "finding and order for final decree filed October 2, 1925."

The facts found by the judge, somewhat more succinctly stated, are as follows: When the contract sued on was made and for some years prior thereto, the plaintiff conducted a general law reporting office. His business still is, and was, to furnish shorthand reporters to lawyers, and others desiring their service to attend hearings before commissions, legislative committees and other public bodies, and trials in courts, or before masters and auditors not employing official stenographers, and to prepare and furnish to his customers transcripts in typewriting of such proceedings. The plaintiff's customers are of Boston for the most part, but he has customers in other of the large cities of the Commonwealth. The defendant is and has been since 1915 a shorthand reporter. Prior to his employment by the plaintiff under the contract in suit, the defendant lived in Washington, reporting trials in the courts of the District of Columbia and of Virginia and Maryland, hearings before congressional committees, and conventions.

In 1921, at the plaintiff's suggestion the defendant came to Boston, entered the plaintiff's employ, and after a time made with the plaintiff the contract in suit, which is dated November 21, 1921, and is under seal. The material parts of the contract are:

"1. The said EDMONSTON agrees, from and after November 21, 1921, to give his entire time and services as shorthand reporter to the said Edgecomb during the usual hours, in the said Edgecomb's business of stenographic reporting, for a period of four years, and this agreement shall continue in full force and effect thereafter until one of the parties hereto shall, on or before the first day of July in any year give to the other party written notice of his intention to terminate his agreement on the first day of the following September, in which case the term hereby created shall terminate in accordance with such notice.

"2. The said EDMONSTON guarantees that he is a qualified Court Stenographer, competent and experienced, and that his services in such capacity shall be satisfactory to the said Edgecomb.

"3. The said EDMONSTON further agrees that upon the termination of this Agreement he will not, without the consent of the said Edgecomb, in writing thereto first obtained, engage in any line of business similar to the said Edgecomb's within the Commonwealth of Massachusetts, for a period of five years thereafter."

Thereafter, and until the events hereinafter related, the defendant gave his entire time and services as a shorthand reporter to the plaintiff's said business.

Late in March, 1922, the plaintiff became dissatisfied with the defendant's work, but an understanding "was reached that their relations should not terminate but that the defendant was to go on and make another trial and do his best." In March, 1923, further dissatisfaction arose with the defendant's work, in consequence of a request by a judge of the Suffolk Probate Court to the plaintiff that the defendant be not sent again to report hearings before that judge. On April 16, 1923, the plaintiff gave the defendant the notice, printed in the finding of the judge, to the effect that his employment under the contract was terminated, "effective not later than May 15, 1923, and as much earlier as is convenient to you." The further report of the judge is as follows:

"Upon all of the evidence I find that the defendant is and was in April, 1923, a qualified court stenographer, competent and experienced but that his services in that capacity under said contract were not satisfactory to the plaintiff, that the plaintiff acted in good faith and was actually and honestly dissatisfied; that the plaintiff performed all the obligations imposed upon him by said contract; that the employment of the defendant was terminated by the plaintiff for good cause; and that the defendant has meantime engaged and is now engaged within the Commonwealth in a line of business similar to the plaintiff's without the plaintiff's consent. No evidence was offered of any substantial damage suffered by the plaintiff because of the defendant's breach of his covenant not to engage in Massachusetts in a line of business similar to the plaintiff's after the termination of said contract. Upon the facts so found I rule as matter of law that the contract was broken by the defendant, that his employ-

ment thereunder was terminated on April 16, 1923, and that this was a 'termination of this agreement' within the meaning of the third paragraph of the contract. I find that the covenant contained in said third paragraph is valid as to consideration and is not lacking in mutuality and is reasonable in its limitation as to time, and is not too vague in its scope to be enforced."

The contention of the defendant is that the covenant, "that upon the termination of this Agreement . . . [the defendant] will not, without the consent of the said Edgecomb, in writing thereto first obtained, engage in any line of business similar to the said Edgecomb's within the Commonwealth of Massachusetts, for a period of five years thereafter," is limited by reasonable construction to cover a period of five years which has its beginning with the time fixed for the end of the employment, and that it cannot reasonably be construed as operative when the contract shall be terminated for causes other than lapse of time. The defendant further contends that the provision of the contract in respect to the satisfaction of the plaintiff with the services of the defendant was misconstrued by the court, in that it found that the plaintiff "acted in good faith and was actually and honestly dissatisfied"; whereas, to justify the plaintiff's action, it was necessary to find that the plaintiff "justly and honestly entertained" the judgment that the services of the defendant were not satisfactory; citing, *Tobin* v. *Kells*, 207 Mass. 304, and *Chandler, Gardner & Williams, Inc.* v. *Reynolds*, 250 Mass. 309, 314.

We are of opinion that the contention as to the time when the covenant became operative is too narrow, and that the fair construction of the agreement is that a lawful termination of the contract by the plaintiff is a termination of the agreement which made operative the covenant of the defendant. We are also of opinion that the finding of the judge that the plaintiff was actually and honestly dissatisfied warranted his finding "that the employment of the defendant was terminated . . . for good cause," without a further finding that the plaintiff's judgment of dissatisfaction was "justly and honestly entertained." If the judgment of the

plaintiff was not "justly and honestly entertained," the judge would not have found that he was "actually and honestly" dissatisfied.

A suit in equity to enforce a negative covenant is actually one for specific performance while not so in form. *Taylor Iron & Steel Co.* v. *Nichols,* 4 Rob. (N. J.) 541. "The practice of enforcing negative covenants . . . is well established, and is a part of the growth of equity jurisprudence to meet and keep up with the growth and development of business methods. The policy of the law is that business men should keep their contracts, and not turn the contractee over to the uncertain remedy of an action at law for damages for nonperformance." Pitney, Vice-Chancellor, in *Feigenspan* v. *Nizolek,* 1 Buch. 382, 394. It long has been settled that equity will not interfere to decree specific performance, except in cases where it would be strictly equitable to make such a decree; and "that contracts restraining freedom of employment can be enforced only when they are reasonable and not wider than is necessary for the protection to which the employer is entitled and when not injurious to the public interest." *Sherman* v. *Pfefferkorn,* 241 Mass. 468, 474. *Blake* v. *Flatley,* 17 Stew. 228, 231. The cases usually arise where an established business has been sold; the seller's agreement to remain out of the trade for a time being required as a part of the consideration and as a means of protecting the good will with which he has expressly or impliedly agreed that he will not interfere. *Angier* v. *Webber,* 14 Allen, 211. *Ruggiero* v. *Salomone,* 248 Mass. 237. The basis of the equitable relief is that the damages suffered or to be suffered are irreparable, or that an action at law would not afford adequate damage. *Angier* v. *Webber, supra. Morse Twist Drill & Machine Co.* v. *Morse,* 103 Mass. 73. *Dwight* v. *Hamilton,* 113 Mass. 175. *Ropes* v. *Upton,* 125 Mass. 258. *Anchor Electric Co.* v. *Hawkes,* 171 Mass. 101. *Myott* v. *Greer,* 204 Mass. 389. *Ruggiero* v. *Salomone, supra. Chandler, Gardner & Williams, Inc.* v. *Reynolds, supra. Farrell* v. *Chandler, Gardner & Williams, Inc.* 252 Mass. 341. *Boston & Suburban Laundry Co. Inc.* v. *O'Reilly,* 253 Mass. 94.

The rule as to the enforcement of negative covenants in agreements of sales is equally applicable in suits where an injunction is sought against the breach of a negative covenant not to engage in a certain trade or business, whenever it appears that the restraint sought is no greater than the fair protection of the plaintiff's business requires, and that the legal remedy is inadequate or the injury is irreparable. Applying the rule to the facts shown by the report, it is plain the exercise of the defendant's business by him alone or in association with others in the city of Boston would probably interfere with the tendency, from habit, of customers to resort to the plaintiff to obtain the services which he furnished and they were accustomed to receive at his office; in a word the exercise of the business of stenographer by the defendant would be likely to impair the good will of the plaintiff's business, and the damages which he would be able to prove would be inadequate, and unsubstantial, for the reason that the basis for the computation would be too speculative, conjectural or uncertain.

The defendant next contends that the finding of the judge that the "limitation of the covenant as to territory went beyond what reasonably was required in order to protect the plaintiff's right of injunctive relief for a limited period against the defendant's competition," made impossible in law his further finding, "that so far as said covenant restrained the defendant from engaging in any line of business similar to the plaintiff's within the city of Boston and from soliciting the plaintiff's customers within the Commonwealth, the limitation was reasonable," for the reason, as argued, that the restrictive covenant is not severable. Upon this point Judge North in *Baines* v. *Geary,* 35 Ch. D. 154, said: "It is quite clear that a covenant·in restraint of trade is good, if it does not go further than is necessary to give reasonable protection to the person who imposes it. There is nothing illegal in such a covenant, but it is considered unreasonable if it imposes a larger restraint than is necessary for the protection of the covenantee. The Courts have, however, seen their way to treat such a covenant as divisible, and to enforce it to the extent to which it is reasonable, while

declining to enforce such part of it as is unreasonable. There are many reported cases in which covenants in restraint of trade have been held to be divisible as regards space. I will refer only to one, *Price* v. *Green,* . . . [16 M. & W. 346]. In that case the defendant had covenanted not to carry on the trade of a perfumer within the cities of London or Westminster, or within the distance of 600 miles from the same respectively, and the court of Exchequer Chamber held that the restriction as regarded London and Westminster was reasonable, and enforced it to that extent, but they held that as to the 600 miles the restriction was unreasonable, and therefore could not be enforced." Speaking of the divisibility of negative covenants, Lord Sterndale, in *Attwood* v. *Lamont,* [1920] 3 K. B. 571, said "I think, therefore, that it is still the law that a contract can be severed if the severed parts are independent of one another and can be severed without the severance affecting the meaning of the part remaining. This is sometimes expressed, as in this case by the Divisional Court, by saying that the severance can be effected when the part severed can be removed by running a blue pencil through it." It is plain the severance in the case of *Price* v. *Green, supra,* was effected in a way that left the covenant in its original form so far as concerned the doing of business in London and Westminster. *Bishop* v. *Palmer,* 146 Mass. 469, supports the rule of *Attwood* v. *Lamont, supra,* and there is nothing necessarily inconsistent therewith in the decision of *Sherman* v. *Pfefferkorn, supra.* See cases cited in support of *Bishop* v. *Palmer,* collected in Williston, Contracts, § 1659, notes 30, *et seq.;* and cases collected supporting the theory of the divisibility of covenants as respects time and territory. *Oregon Steam Navigation Co.* v. *Winsor,* 20 Wall. 64, 70. *Meyers* v. *Merillion,* 118 Cal. 352, 357, 358. *Baines* v. *Geary, supra. Harris* v. *Theus,* 149 Ala. 133. *Gregory* v. *Spieker,* 110 Cal. 150. *Fox* v. *Barbee,* 94 Kans. 212.

Having regard to the terms of the contract in the suit at bar and to the attendant circumstances of its making and breach, a majority of the court are of opinion that the theory of the divisibility of space as applied to this contract is con-

sonant with public policy and is more consistent with the intent of the contract than is the contention that the negative covenant is not enforceable in equity, in whole or in part, because the unit of space is not so described as to indicate its component territorial parts and divisions. It follows that a decree should be entered restraining the defendant from engaging in any line of business similar to the plaintiff's within the city of Boston, and from soliciting the plaintiff's customers within the Commonwealth of Massachusetts for a period of five years from April 16, 1923.

*Decree accordingly.*