LEWIS VAN DUYNE

*v.*

THE KNOX HAT MANUFACTURING COMPANY.

[Submitted June 19th, 1906.    Decided June 22d, 1906.]

1. The filing of a map of property, showing the streets laid out thereon by the owner, worked a complete dedication of such streets to the public.

2. The effect of filing a map showing streets laid out therein, and the sale of lots abutting therein, is simply to give a private right of way over the streets in favor of the grantees, and does not authorize the laying of private water pipes in the streets by such grantees, except in front of their own land.

3. In this state the fee of the highway remains in the dedicator of the property through which the highway runs with all the rights incident to ownership and subject only to the rights of the public therein.

4. A municipality is a mere trustee for the public at large, and can only exercise the rights vested in it over streets for the furtherance of the rights of the public, and is not authorized to grant the right to a private citizen to make a special use for private purposes of the substratum of a public highway, the fee of which is owned by another, and hence the municipal authorities of a borough could not lawfully grant to a private citizen or corporation the right to lay water pipes in the streets to be used for private purposes.

5. Where a private corporation laid its pipes in public streets for the purpose of furnishing the buildings of the corporation with water, the pipes being intended to be permanent and in constant use, an abutting landowner, before completion of the work, was entitled to enjoin further prosecution thereof.

---

On final hearing on bill, answer and proofs.

*Mr. Willard W. Cutler,* for the complainant.

*Mr. Raymond Dawson,* for the defendant.

PITNEY, V. C.

The object of this suit was and is to restrain the defendant from digging and excavating the lands of the complainant and placing and establishing thereon, beneath the surface of the earth, a tile drain and water conduit.

The ownership of the land by the complainant is admitted, and the act justified by the defendant on the ground that the place in question is a public highway within the limits of the borough of Boonton, in the county of Morris, and that the defendant had obtained formal permission from the municipal authorities of Boonton to lay the drain.

The reply to this defence by the complainant is:

*First,* that the *locus in quo,* although formally dedicated by the complainant to the public, had never been accepted by the municipal authorities, either by formal proceedings for that purpose or by actually working the street, and that there had been no such actual user of it by the public as to amount to acceptance; and *second,* that granting it to be a public street, yet the use which the defendant proposed to make of the water conduit was a private use, and that the common council had no power, as against the owner of the fee of the street and of the adjoining land, to grant to a private individual the right to lay a conduit for water through and along the street to be used for its private purposes.

A third and further question raised by the defendant was that it is not a proper case for the exercise of the restraining power of the court.

*First,* with regard to the status in the law of the *locus in quo* at the time the excavation was made.

The evidence and maps show a street running northeast and southwest in Boonton, called William street, apparently a finished street, but lying well on the southeasterly outskirts of the town.

Southeast of William street there was and is a wedge-shaped

piece of land, which had been laid out in lots and built upon to some extent apparently, about eleven hundred feet long and about two hundred feet wide on the southwesterly end and four hundred ·feet on the northeasterly end.

Running southeasterly from William street was a street called Spruce street, which ended six years ago at a tract of land belonging to a family of Mandevilles, which was entirely unimproved and which in 1900 was purchased by the complainant.

He made a map of it, extending Spruce street across it from northwest to southeast and bisecting it at right angles to Spruce street by a street called Mechanic street, which was an extension of that street from a street farther to the southwest called Cedar street and which latter was open and built upon.

In the centre of the block, southeast of Mechanic street and east of Spruce street, he sold to the defendant, or rather to individuals under whom it claims, a plot of land upon which it has established its factory. That plot, owned by the defendant, extends through from Mechanic street to a street called Division street, parallel to it.

Spruce street and Mechanic street cross each other at right angles.

That part of those two streets lying on the complainant's land has never been accepted by the municipal authorities, and the part of Spruce street immediately northwest of Mechanic street has never been worked. It constitutes the place where the tile was being laid at the time of the filing of the bill.

Mr. Osmun, the superintendent of the defendant company, was asked as to the condition of Spruce street at the time the earthen pipe was laid in it, and answered as follows:

"*A.* I couldn't say positively now whether that pipe was where the ditch was or not; there was a ditch running through there—oh, Spruce street?

"*Q.* Yes.

"*A.* Well, that was to me, you see, as I went by, simply a lot of brush and briars and things.

"*Q.* (By the court.) Then Spruce street was not practicable?

"*A.* That part of it was not open—not used.

"*Q.* And how about Mechanic street; what condition was Mechanic street in?

"*A.* That was used as a passageway, that's all."

The defendant obtained the control of a vacant lot on the corner of William street and Spruce street to the northwest of complainant's land upon which there was supposed to be a spring or living stream of water. This supposed flow of water was at a higher elevation than the hat factory, and its officers conceived the idea of laying a cheap tile pipe from the supposed spring through the part of Spruce street lying on complainant's land northwest of Mechanic street to the crossing of Spruce and Mechanic streets, then along the latter street to the factory. This was in the fall of 1904.

Complainant, learning of this proposed action, warned the defendant's officers against it, and they yielded to his remonstrance and desisted until the summer of 1905. On the 1st day of September, 1905, the defendant wrote a letter to the common council of Boonton, as follows:

"We hereby ask your permission to lay a tile pipe across Spruce street and Mechanic street for the purpose of carrying clear brook water from the lots recently purchased by us, on the corner of Spruce and William streets, the water to be carried to our factory on Division street. We will assure you that the pipes will be laid far enough below the ground so that it does not interfere with the streets.

"KNOX HAT MANUFACTORY.
"By JOHN W. OSMUN, *Superintendent*."

Whereupon the common council passed this resolution:

"On motion, *Resolved*, That permission be given to the Knox Hat Company to lay a pipe from the southwest side of William street and Spruce street through to its property, on condition that if it shall be necessary for said pipe to run through or across any street now accepted as such by the town, or that may be hereafter occupied or claimed by the town, that the said Knox Hat Company will, whenever the town so requests, either raise or lower said pipe along or across said street or streets, as the case may be, at its, the Knox Hat Company's, own expense."

No notice of this proceeding was given to the complainant, nor did he have any suspicion that such a project was on foot until he heard that defendant was actually at work in its excavation on the ground.

He then immediately served on defendant this notice:

"Boonton, September 20th, 1905.
"*To the President, Directors, Agents or Employes of the Knox Hat Manu-
facturing Company:*

"You are hereby notified to discontinue making excavation on that por-
tion of my property in the town of Boonton where you are now ·digging a
ditch, and you· will at once restore the ground to its original condition,
and place no pipes therein."

Finding they did not yield he employed counsel, procured a
bill in equity to be prepared with affidavits in support of it, which
are verified the 23d of September, and on the 25th of Septem-
ber an order to show cause was made with *interim* restraint
against the defendant.

That order was served on the 26th of September on the de-
fendant's officers at its main office in Brooklyn, N. Y., about
half-past ten o'clock in the morning.

At that time the work of laying the pipes in Spruce street was
not finished, but the proof is quite clear that after the noon hour
of that day an additional and large force of men was put on the
job who worked to finish it beyond the usual hour in the evening.

Whether the work was ever actually finished so that the water
ran through the conduits did not appear.

With regard to the law· of the case, I am unable to perceive
that there is the least doubt about it. The complainant's act of
filing a map showing the streets worked a complete dedication of
them to the public so far as it was possible for him to effect it.

The evidence is quite clear that the part of Spruce street lying
immediately northwest of Mechanic street was never accepted
by the common council or used by the public in such manner as
to give the public at large any right therein.

The effect of the dedication was simply to give a private right
of way over it in favor of persons to whom the complainant may
have sold lots thereon, and it is probable that defendant had
such private right of way. But clearly that private right of way
did not authorize it to lay down a water pipe in it. In this state
the fee of the highway remains in the dedicator with all the
rights incident to ownership and subject only to the rights. of
the public therein.

The municipality of Boonton stands in the same position as
the defendant. It had never, as we have seen, adopted, recog-

nized or worked that part of Spruce street, and the resolution giving the defendant permission to lay pipes was carefully worded so as not to commit the municipality to enter into any responsibility in that behalf. They apparently carefully avoided assuming any authority, since the exercise of authority by the municipality entails a corresponding responsibility. So that on that part of the case I think the defendant fails.

But, second, granting that this part of Spruce street was a public street subject to the jurisdiction of the municipal authorities, I am unable to see how that helps the defendant. The municipality is, after all, a mere trustee for the public at large, and can only exercise the rights vested in it over streets for the furtherance of the rights of the public. Originally and primarily those rights were confined to mere rights of passage, but later on, and not without a struggle, they were extended to include the laying of water and gas pipes and sewers, in each and every case, however, for public purposes.

It seems to me that no respectable argument can be advanced in favor of the proposition that a municipal authority has the power to grant the right to a private citizen to make a special use for private purposes of the substratum of a public highway, the fee of which is owned by another. No authority was advanced in favor of that proposition.

Counsel for defendant stated in his argument that it had been the practice of the town of Boonton to grant a permit to parties to lay drain pipes in the streets of Boonton to be used for private purposes, and that that power to do so had never been questioned. Undoubtedly persons desiring to lay private drains under a street would feel constrained to obtain the permission of the common council, since without it they would have no right, and it may be that the owners of the soil have acquiesced without objection to such use of the street. But it does not follow that if the owner had been disposed to object his objection would not have been fatal.

But granting all this, defendant argues that the complainant's right is not so clear as to warrant this court in proceeding until it is settled at law.

I cannot adopt that view. Complainant is admitted to be the

owner of the fee of the highway. He owns what for present purposes amounts to the whole frontage on each side of Spruce street. That ownership carries with it all the rights incident to ownership, and no judgment at law is necessary to establish it. And it seems to me to be equally clear that the easement of a highway is limited to public uses. If any doubt exists in the case the doubt is whether the defendant has any rights whatever in the so-called streets.

The other point taken by the defendant is that the complainant has a complete remedy at law. On this point I have to say if the defendant's work had been completed before complainant presented his bill a different question would arise, the solution of which is not necessary for present purposes. The case actually presented, however, is this: The complainant acted promptly as soon as he learned of the defendant's offensive action, and served written notice on it to desist. Finding that of no avail, he employed counsel, procured a bill to be prepared with affidavits with commendable promptness, procured a restraining order and employed a messenger to serve it, who proceeded to the main office of the defendant in Brooklyn, N. Y., for that purpose. The work was still unfinished, and had it been stopped at the time the order was served, the preventive remedy would have been effectual. But instead of that a         ed force of workmen were put on the job under circumst        that are very suspicious at least, and the work was continu

I have no doubt in my mind of the power and propriety of this court interfering to stop the defendant in its work. Whether it was successful or not does not appear. Now, under these circumstances, it does not lie in the mouth of the defendant to say that complainant is too late to ask the court to give him the aid of its extraordinary power.

And then the character of the structure must be considered. In the first place, it was intended to be a permanent structure and to be in constant use, and, if acquiesced in, it established an easement on complainant's land which was permanent, and deprived him of the use of so much of the subterraneous earth beneath the surface of the street—admitting for argument's sake that it was a street at law—as he is clearly entitled to subject to

the rights of the public in the matters which I have previously mentioned. Further, the evidence shows that the pipe-line as laid did not proceed from defendant's spring lot directly to the centre of Spruce street on defendant's land as it might have done, and then follow the centre of Spruce street and the centre of Mechanic street till it reached the defendant's land, but it started from the edge of the street at the corner of defendant's land and the corner of complainant's land, and ran diagonally through Spruce street to the corner of Mechanic street, and in Spruce street going for a large part of the way under what will be, if the street is ever improved, sidewalks, the land on each side of the street as well as in the centre being confessedly the property of the complainant. Now, it seems to me, that is placing a serious burden on the property of the complainant and will interfere with its beneficial enjoyment.

I will therefore advise a decree for the complainant in accordance with these views.