## Stone et al. v. Marks Corporation et al.

*Russell B. Updegraff* and *E. M. Biddle, Jr.*, for plaintiffs.

*Myers & Myers* and *Joseph P. McKeehan*, for defendant Marks Corporation.

*W. E. Shissler*, for defendant Borough of New Cumberland.

REESE, P. J., August 3, 1943.—This is a proceeding for a declaratory judgment adjudicating the rights of the parties hereto in a portion of Walnut Alley, located in the Borough of New Cumberland. From the admissions in the pleadings, from facts stipulated by counsel, and from the competent evidence adduced at a hearing we make the following

### Findings of fact

1. In the Borough of New Cumberland two parallel streets, known as Second and Third Streets, run in a northeast-southwest direction at approximately right angles to the Susquehanna River. About midway be-

tween these two streets and parallel thereto is an alley, known as Second Alley. An alley, known as Walnut Alley, crosses Second and Third Streets and Second Alley at right angles.

2. The Marks Corporation, defendant herein, owns a woolen mill, formerly owned by the Susquehanna Woolen Company, which lies on the side of Walnut Alley nearest the river, and extends from Third Street to Second Alley. The Marks Corporation also owns vacant land on the other side of Walnut Alley, across from the mill, and proposes to erect thereon a building which will in part occupy that portion of Walnut Alley lying between Third Street and Second Alley.

3. Petitioners herein are the owners of land on the side of Walnut Alley nearest the river between Second Alley and Second Street. On the land of petitioners is erected a two-story brick factory building, used by petitioners in the manufacture of boxes.

4. In the factory of petitioners is a sprinkler system for water protection, the water supply for which was furnished under a contract with the Susquehanna Woolen Company from a six-inch main of the local water company on Third Street and through a six-inch main running under the woolen mill property.

5. On January 25, 1943, the Marks Corporation, defendant herein, shut off the supply of water used by petitioners in their sprinkler system.

6. To have adequate fire protection for the factory building of petitioners it is necessary to have a six-inch main to carry the water supply from some main of the local water company, and the nearest point of any such main of the water company is on Third Street at its intersection with Walnut Alley, a distance of approximately 275 feet from petitioners' factory building.

7. Walnut Alley, leading from Third Street to Second Street, is the shortest, least expensive, and the most practicable course for the installation by petitioners of a six-inch water main from the water main of the local

water company on Third Street, and petitioners have secured the amount of water pipe necessary for that purpose.

8. Petitioners requested, in compliance with a borough ordinance, from the secretary of the borough a permit for permission to install a water main in Walnut Alley, as aforesaid.

9. The secretary refused to issue the permit, apparently on the ground that the portion of Walnut Alley between Third Street and Second Alley is no longer a public street.

10. Early in the nineteenth century and several years prior to 1831, Jacob M. Haldeman, the then owner of the land involved, laid out and adopted a plan of lots for the "town of Cumberland", and sold and conveyed the lots therein according to the plan, which, in his deeds, he describes as "recorded in this county".

11. Among those who then so purchased lots included in said plan were the predecessors in title of the lands now owned by plaintiffs and the Marks Corporation.

12. The land so laid out and sold by Jacob M. Haldeman is now included within the limits of the Borough of New Cumberland, as that borough was organized and chartered in 1831.

13. Walnut Alley, including the portion of it lying between Third Street and Second Alley in its present location, with a width of 16 feet, was one of the alleys appearing on the Haldeman plan of lots.

14. From at least as far back as the year 1831 until some time in March 1943, Walnut Alley, including the portion lying between Third Street and Second Alley, has been used openly, freely, and without objection by the public generally.

15. Walnut Alley, in its present location, including the portion lying between Third Street and Second Alley, appears on the draft or plan of the streets and

alleys of the Borough of New Cumberland made in 1879 by Col. F. C. Arms, county surveyor.

16. By ordinance no. 51 (adopted in 1896) of the Borough of New Cumberland, all of the streets and alleys appearing on said draft or plan of Col. F. C. Arms were ordained to be the streets and alleys of said borough. None of the streets or alleys was specifically named in the ordinance.

17. On November 5, 1923, the Borough Council of the Borough of New Cumberland passed, over the veto of its chief burgess, an ordinance entitled "Vacating a Portion of Walnut Alley . . . and authorizing and empowering the Susquehanna Woolen Company to use and occupy the same in the enlargement and improvement of its present manufacturing plant". Section 1 of the ordinance provides that the portion of Walnut Alley lying between Third Street and Second Alley "is hereby vacated and declared closed to public use and travel as a public alley". Section 2 of the ordinance provides:

"The said Susquehanna Woolen Company, its successors and assigns, are hereby granted full permission, right and authority to exclusively use and occupy at all times hereafter for manufacturing purposes that portion of Walnut Alley above vacated."

Section 3 of the ordinance provides:

"The said Susquehanna Woolen Company shall, at its own proper cost and expense, provide an alleyway of not less than ten feet in width to the south of its present property line between Third Street and Second Alley, which shall at all times be open to the free and unobstructed public use."

18. On December 3, 1923, the Susquehanna Woolen Company paid to the Borough of New Cumberland the sum of $500, ostensibly as compensation for the vacation of the portion of Walnut Alley between Third Street and Second Alley.

19. The Susquehanna Woolen Company never expressly accepted the grant mentioned in the ordinance of November 5, 1923. It never used the allegedly vacated portion of Walnut Alley nor any part thereof for manufacturing purposes. It never obstructed that portion of the alley and never laid out any alley in lieu of the portion of Walnut Alley alleged to be vacated.

20. Since the enactment of the ordinance of November 5, 1923, and until some time in March 1943, Walnut Alley, including the portion alleged to be vacated, has been used openly, freely, and without objection by the public generally.

21. In the year 1924 the Borough Council of New Cumberland caused to be prepared a plan for a sanitary sewer system. The plan submitted called for a trunk sewer line in Walnut Alley between Third Street and Second Alley, and showed an existing sewer line therein. The plan was approved by the borough council and, at its instance, was approved by the proper authorities of the Commonwealth of Pennsylvania.

### Discussion

The first question which we are asked to determine is whether or not the portion of Walnut Alley herein involved (the portion between Third Street and Second Alley) is a public street. We are of the opinion that it is. It was accepted as a public street, both by long-continued use and by the ordinance of 1896. Its status as a public street was not changed by the ordinance of November 5, 1923, because, in our opinion, that ordinance was invalid and unconstitutional. There is an enlightening discussion of the validity of vacating ordinances in 4 McQuillin on Municipal Corporations (rev. 2nd ed.), pp. 344 to 350. At page 344 it is stated:

"There are three rules often declared in the decisions in regard to the purpose and motive for vacating a street and the power of the courts to investigate the

motives or interfere with the discretion of the municipal authorities in regard thereto. The first rule is that a street or alley cannot be vacated for a private use, i. e., for the purpose of devoting it to the exclusive use and benefit of a private person or corporation; but it may only be vacated to promote the public welfare. . . . there is no power, it is generally held, to vacate a street or alley on payment of a cash consideration by an abutter."

In City of Louisville v. Bannon, 99 Ky. 74, 79, 35 S. W. 120, it is stated:

"A mere money consideration, to be paid to the government, State or municipal, is not a public use for which private property can be taken from one citizen and given to another."

In 44 C. J. 898, it is said:

". . . a city . . . cannot vacate a street for the benefit of a purely private interest, although it receives a consideration therefor . . ." The discussion by McQuillin continues on page 346:

"The second rule is that the motives of the municipal authorities in vacating a particular street or alley cannot be inquired into. But while the courts cannot inquire into the motives of the council in vacating a street, they may consider the purposes accomplished by the vacating ordinance, and if the purpose effected thereby is illegal, as where the street is vacated for the sole purpose of benefiting abutters, may set it aside.

"The third rule is that the discretion of the municipal authorities in vacating a street or alley will not be controlled or interfered with by the courts unless there is a plain case of abuse . . . If it appears that the vacation is a mere attempt to alien or otherwise dispose of the public right and interest for a private use the courts will protect the public right."

Applying the foregoing principles to the present case, the invalidity and unconstitutionality of the ordinance of November 5, 1923, clearly appears. On its

face the ordinance reveals that its purpose was not to effect any public purpose nor to promote the public interest but, instead, to advance the interests of a private corporation for profit. The ordinance, on its face, attempts to transfer the right of the public in a public street to a private corporation for private use. It also attempts to transfer to a private corporation, for private use and without compensation, the property rights of other lot owners, the nature of which we shall hereinafter discuss. In Ormsby Land Co. v. Pittsburgh et al., 276 Pa. 68, a street was laid out and dedicated to the public by the owners. It was never opened, although it was later accepted by the City of Pittsburgh as one of its highways. Subsequently an ordinance attempted to lease a portion of the land within the street to a private corporation. An injunction was granted to an abutting owner, and the Supreme Court said (p. 70):

"Where land is dedicated for street purposes by the owner and accepted by the municipality, such action is equivalent to a taking . . . and the property so taken may not lawfully be applied to another and distinct purpose by the municipality unless it be *a public use* . . . 'Not even the legislature can authorize the condemnation of private property for other than a public use; hence the appropriation of a street to a private purpose cannot be justified even by legislative authority.' " (Italics supplied.)

In our opinion, the decision in Titusville Amusement Co. et al. v. Titusville Iron Works Co. et al., 286 Pa. 561, does not prevent us from reaching a conclusion that the ordinance of November 5, 1923, was invalid and unconstitutional. The facts of the case cited were somewhat similar to those in the instant case. A portion of a street, on both sides of which defendant owned property, was vacated by a city ordinance. Plaintiff sought an injunction to prevent defendant from build-

ing on the vacated portion of the street. The validity of the ordinance was attacked by an allegation that the ordinance was passed at the instance and for the benefit of defendant. The court held that the city had a legal right to vacate a portion of the street and that the courts would not inquire into the city's purpose in doing so. As pointed out by the Supreme Court (p. 566):

"The ordinance only provides for the vacation of the street 'as a public street,' leaving undisturbed whatever private rights, if any, plaintiffs may have because of the sale of lots according to the plan."

The ordinance in the case cited did not, as in the instant case, attempt, on its face, to transfer to a private corporation for private use both the public right in the street as well as the private rights of other lot owners.

In the Titusville case it was said that the courts cannot inquire into a municipality's purpose in passing a vacating ordinance, but, as pointed out in McQuillin on Municipal Corporations, supra, there is a distinction between inquiring into the motive of the legislative body and the purpose or aim of its enactment; and in the instant case the purpose of the ordinance is, on its face, an improper one. In Kiker v. Philadelphia et al., 346 Pa. 624, 644, the court said:

"No motive, purpose, or intent can be imputed to the legislature in the enactment of a law other than such as are apparent upon the face and to be gathered from the terms of the law itself."

This language certainly indicates that the courts can properly consider what appears on the face of an enactment, and if the purpose or aim of the enactment appears, on its face, to be improper, the courts certainly have the power so to declare.

Assuming that the ordinance did validly vacate the portion of Walnut Alley herein involved, it would seem

that the whole situation would then revert to its status under the plan of lots and the deeds of the original grantor in reference thereto. When he laid out the plan of lots showing the streets and alleys and sold and conveyed lots in reference thereto there was a dedication of the streets and alleys to the public use, and this dedication would still subsist following the formal vacation of the alley. The dedication in such a case is a continuing offer: Milford Borough v. Burnett, 288 Pa. 434, 438; and is irrevocable: O'Donnell v. Pittsburgh, 234 Pa. 401, 410; Gailey et al. v. Wilkinsburg Real Estate Trust Co., 283 Pa. 381, 385; Davis et al. v. Kahkwa Park Realty Co. et al., 296 Pa. 281, 284. Since 1923, when a portion of the alley was allegedly vacated, the borough has adopted a plan for a sewer system, which shows a sewer line through the portion of the alley herein involved. Since the same date nothing was done for nearly 20 years actually to close the allegedly vacated portion, and, on the contrary, it was used openly, freely, and without objection by the public generally. It would seem that this would constitute an acceptance of the street as a public street. The mere dedication of a street to public use by the owner will not make it a public street unless it is accepted by the public. Such a street, however, may be accepted by public user without the active intervention of municipal authorities. Where such public user is in pursuance of dedication by the owner it requires much less time to presume an acceptance by the public than where there has been a mere user without dedication: Commonwealth v. Shoemaker, 14 Pa. Superior Ct. 194; Milford Borough v. Burnett, supra.

The borough contends that the vacating ordinance of 1923 was conditioned on the laying out of an alternate alley by the Susquehanna Woolen Company, and that since this has not been done for 20 years the vacation of the alley is inoperative. In view of what we

have already said, it is unnecessary to pass upon this contention.

We must next consider whether petitioners herein have any private rights in the portion of Walnut Alley involved herein, regardless of its status as a public street. When the original owner, Jacob Haldeman, laid out and adopted the plan of lots and sold and conveyed lots by reference to the plan, there was a dedication of the streets and alleys shown on the plan to the use of the public, and each lot owner acquired by contract an implied covenant that the streets and alleys appearing on the plan should be forever open to their use. In other words, each lot owner acquired an easement over all the streets and alleys shown on the plan, and the easement thus acquired is a property interest: Chambersburg Shoe Mfg. Co. v. Cumberland Valley R. R. Co., 240 Pa. 519; Gailey et al. v. Wilkinsburg Real Estate Trust Co., supra.

Even if we should assume that the ordinance of November 5, 1923, was valid insofar as it vacated a portion of Walnut Alley, nevertheless, the contractual and property rights of the individual lot owners would remain, because ". . . no act of the public authorities can operate to divest the property rights of the lot owners resulting as a legal consequence from the implied covenants under which they purchased": Chambersburg Shoe Mfg. Co. v. Cumberland Valley R. R. Co., supra, at page 522. The easement owned by the various lot owners, being a property interest, may be taken under the power of eminent domain, but the power of eminent domain must be exercised only for a public use; and in the present case the easement of the various lot owners could not be taken for a private use as the ordinance herein attempted to do.

It is contended by defendants herein that a vacating ordinance may not only abolish a thoroughfare as a public one but also may include the extinguishment of the easement of lot owners arising from the implied

covenants in the original deeds. Gailey et al. v. Wilkinsburg Real Estate Trust Co., supra, so holds, but it also holds that the easement of the lot owners can be extinguished only if it is appropriated for a public use. In the present case the vacating ordinance attempted to appropriate the easement of the other lot owners to a private use.

Inasmuch as we have concluded that the portion of Walnut Alley herein involved is a public street, it follows that the borough may permit petitioners to excavate in and use the alley for the purpose of laying a private water line: Miller v. Borough of New Oxford, 109 Pa. Superior Ct. 85, 90; Smith v. Simmons, 103 Pa. 32; Borough of Susquehanna Depot v. Simmons et ux., 112 Pa. 384; Wood v. McGrath, 150 Pa. 451.

We have also concluded that, whether or not the portion of Walnut Alley herein involved is still a public street, petitioners herein have an easement in the streets and alleys shown on the original Haldeman plan, including the portion of Walnut Alley. Do petitioners, by virtue of their easement, have the right to lay water pipes in the portion of Walnut Alley herein involved? The authorities which we have been able to find on this point indicate that this question must be answered in the negative. In 28 C. J. S. 768, §88, it is said:

"The effect of filing a map showing streets laid out therein, and the sale of lots, abutting therein, is simply to give a private right of way over the streets in favor of the grantees, and does not authorize the laying of water pipes in the streets by the grantees."

To the same effect is Van Duyne v. Knox Hat Mfg. Co., 71 N. J. Eq. 375, 64 Atl. 149, wherein the court held that the effect of the dedication by selling lots in reference to a plan is simply to give a private right of way over it in favor of grantees, but that such private right of way does not authorize the grantees to lay water pipes. To the same effect is

Buehler v. Emery, 21 Dist. R. 1098, wherein Judge Trexler, later president judge of the Superior Court, said that the easement of the various lot owners is limited to a right of passage. In Gailey et al. v. Wilkinsburg Real Estate Trust Co., supra, it is said that the easement of lot owners in a case like the present one is merely one of passage. In Schumacher v. Ploplis et al., 87 Pa. Superior Ct. 265, 270, the court said:

"The owner of a lot purchased according to a plan on which streets are plotted has an easement of access in the streets. . . ."

The cases cited by petitioners are not contrary to the conclusion herein reached. Each of those cases deals with the right of a municipality to permit the installation of pipes or drains in a public highway or public street. In such case, a distinction is made between a public highway in a rural community and a public street in a city or borough, and it is held that in a rural community the installation of pipes in a public highway is an additional servitude for which compensation must be made, whereas in a city or borough the municipality may authorize the installation of pipes or drains in the public streets. We can find no authority for any such distinction in the case of an easement of an owner of a lot purchased according to a plan on which the streets are plotted.

### Declaratory judgment

And now, August 3, 1943, it is adjudged and decreed that:

1. The portion of Walnut Alley between Third Street and Second Alley in the Borough of New Cumberland is a public street.

2. The Borough of New Cumberland, in accordance with its appropriate ordinance, may permit petitioners, although they are private individuals, to install a water main in the portion of Walnut Alley aforesaid, it being a public street.

3. Regardless of the status of the portion of Walnut Alley aforesaid as a public street, petitioners, being owners of lots included in the original Haldeman plan of lots, have an easement of access or passage over the streets and alleys shown on said plan, including the portion of Walnut Alley aforesaid, but their easement does not include the right or privilege to install a water main in the portion of Walnut Alley aforesaid.